

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 18, 2023

**BY ECF AND EMAIL**

The Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *United States v. Miguel Franco*, 22 Cr. 374 (LGS)

Dear Judge Schofield:

  The Government respectfully submits this letter in advance of the violation of supervised release hearing in the above-referenced case, which is scheduled to take place on Tuesday, September 26, 2023, to summarize the Government's anticipated evidence concerning the defendant's violations of the conditions of his supervised release, and to move for the admission of certain statements and recordings at the hearing.

**I. Scope of September 26, 2023 Hearing**

  A. The Violation Report, Specifications, and Elements of the Offenses

  The Amended Violation Report of the Probation Office, dated July 19, 2023 (the "Violation Report"), charges the defendant with thirteen specifications, broadly relating to three different categories: (1) specifications relating to the defendant's alleged participation in the trafficking of cocaine and fentanyl in Maine (the "Maine Narcotics Offenses"); (2) the defendant's alleged assault of another inmate while detained in the court's holding cell on June 28, 2023 (the "June 28th Assault"); and (3) specifications relating to the defendant's alleged failure to abide by the terms of his supervised release (the "Supervision Violations").

  Of these thirteen specifications, the Government intends to pursue nine specifications, which can be broadly grouped into three categories: (1) the Maine Narcotics Offenses (Specifications 14 and 15); (2) the June 28th Assault (Specifications 12 and 13); and (3) the Supervision Violations (Specifications 2, 3, 4, 8, and 11).

  Those nine specifications and their respective elements, where applicable, are listed below.

| Specification | Relevant Legal Standard |
|---|---|
| **February 2023 Maine Narcotics Offenses** ||
| Specification 14 alleges that, on or about February 2nd and February 9th, 2023, in Bangor, Penobscot County, Maine, the defendant committed the State of Maine crime of aggravated trafficking in scheduled drugs, in violation of Section 17-A M.RS. 1105-A(1)(B)(1), in that he intentionally or knowingly trafficked in what he knew or believed to be a scheduled drug, namely fentanyl powder. | In Maine, a defendant is guilty of aggravated trafficking in a scheduled drug if the defendant: (1) intentionally or knowingly traffics in; (2) what the person knows or believes to be a scheduled drug, which; (3) is in fact a scheduled drug; (4) the drug is a schedule W drug; and (5) the defendant has a prior conviction under Section 1105 for a Class A, B, or C offense, or has a prior conviction for engaging in "substantially similar" conduct to a Class A, B, or C offense.  Fentanyl is classified as a Schedule W drug under Chapter 45 of the Maine Criminal Code. |
| Specification 15 alleges that, on or about February 2nd and February 9th, 2023, in Bangor, Penobscot County, Maine, the defendant committed the State of Maine crime of aggravated trafficking in scheduled drugs, in violation of Section 17-A M.RS. 1105-A(1)(B)(1), in that he intentionally or knowingly trafficked in what he knew or believed to be a scheduled drug, namely cocaine. | In Maine, a defendant is guilty of aggravated trafficking in a scheduled drug if the defendant: (1) intentionally or knowingly traffics in; (2) what the person knows or believes to be a scheduled drug, which; (3) is in fact a scheduled drug; (4) the drug is a schedule W drug; and (5) the defendant has a prior conviction under Section 1105 for a Class A, B, or C offense, or has a prior conviction for engaging in "substantially similar" conduct as a Class A, B, or C offense.  Cocaine is classified as a Schedule W drug under Chapter 45 of the Maine Criminal Code. |
| **June 28th Assault Specifications** ||
| Specification 12 alleges that, on or about June 28, 2023, the defendant committed the New York State crime of assault in the second degree, a class D felony, in that he repeatedly struck another inmate in the face, head, and torso, with a closed fist, while in the custody of the U.S. Marshals, in violation of N.Y. Pen. Law § 120.05. | In New York, a defendant is guilty of assault in the second degree when: (1) with intent to cause physical injury to another person, (2) the defendant causes such injury, (3) to such person or a third person.  *See* N.Y. Pen. L. § 120.00. |
| Specification 13 alleges that, on or about June 28, 2023, the defendant committed the New | In New York, a person is guilty of assault in the third degree when: (1)  with intent to |

| | |
|---|---|
| York State crime of assault in the third degree, a class A misdemeanor, in that he repeatedly struck another inmate in the face, head, and torso, with a closed fist, while in the custody of the U.S. Marshals, in violation of New York Penal Law §120.00. | cause physical injury to another person, he causes such injury to such person or to a third person; (2) the defendant recklessly causes physical injury to another person; or (3) with criminal negligence, the defendant causes physical injury to another person by means of a deadly weapon or a dangerous instrument. |
| **Supervision Violations** ||
| Specification 2 alleges that, on or before June 8, 2022 and June 27, 2022, the defendant used oxycodone. | Not applicable. |
| Specification 3 alleges that, on or before June 8, 2022, June 27, 2022, and August 18, 2022, the defendant used oxymorphone. | Not applicable. |
| Specification 4 alleges that, on or before August 18, 2022, the defendant used cocaine. | Not applicable. |
| Specification 8 alleges that, on or before July 12, 2022, the defendant failed to participate in a re-entry consultation at the Probation Office. | Not applicable. |
| Specification 11 alleges that, on or about November 29, 2022, the defendant failed to appear in Court and stopped reporting to Probation. | Not applicable. |

B. <u>Anticipated Proof</u>

With respect to the February 2023 Maine Narcotics Offenses, the Government's anticipated proof will include the following: (1) body worn camera footage and audio recordings from a confidential informant who purchased fentanyl and cocaine from the defendant on February 2, 2023 and February 9, 2023; (2) testimony of a Special Agent assigned to the Maine Drug Enforcement Agency, who led the investigation of the defendant, coordinated both controlled buys in February 2023, and executed a search warrant on the residence where the defendant sold narcotics with his alleged co-conspirators; (3) photographs identifying the various narcotics sold by the defendant, as well as the cash used by the confidential informant who made the purchases; (4) results from a handheld narcotics analyzer used by the Special Agent confirming the content of the narcotics purchased from the defendant; and (5) photographs and reports describing the additional cash and drug paraphernalia seized by local law enforcement from the residence where the defendant sold narcotics.

With respect to the June 28, 2023 Assault Specifications, the Government's anticipated proof includes: (1) surveillance video depicting the defendant assaulting the victim, another inmate, while awaiting presentment on June 28, 2023; (2) medical records describing the extent of the assault victim's injuries, including photographs taken by medical staff when the victim arrived at the hospital; (3) testimony from one or more Deputy Marshals who responded to reports of an assault, separated the victim and the defendant, and transported the victim to the emergency room for medical treatment; (4) photographs of the victim's injuries taken by medical personnel who treated the victim at the hospital; (5) the U.S. Marshals' incident report regarding the June 28, 2023 assault; and (5) photographs of the condition of the cell block, the defendant, and the victim taken by the Deputy Marshals in the immediate aftermath of the assault.

Finally, with respect to the Supervision Violations, the Government's proof includes: (1) testimony from the Probation Officer responsible for supervising the defendant during his period of supervised release; (2) laboratory results collected by Probation in connection with four urine tests submitted by the defendant as a condition of supervised release; and (3) meeting notes prepared by the defendant's Probation Officer documenting the defendant's failure to abide by several of the conditions of his supervised release.

The Government also will seek to introduce various stipulations between the parties, including: (1) stipulations regarding the authenticity of the video and audio recordings described above; (2) a stipulation that the narcotics sold by the defendant in February 2023 were analyzed and were found to contain cocaine and fentanyl; and (3) stipulations regarding the results of the drug testing the defendant submitted to as a condition of his supervised release.

## II.   Evidentiary Issues

The Government respectfully submits that the Court should admit: (1) the body camera footage and audio recordings depicting the defendant selling fentanyl and cocaine to a confidential informant in February 2023; and (2) the assault victim's out-of-court statements to the responding Deputy Marshals about the assault, in which he identified the defendant as the assailant. As discussed below, even if the victim's statements and the out-of-court recordings did not fall under hearsay exceptions—and they do—good cause nonetheless exists to admit them at a revocation hearing.

### A. Applicable Law

A supervised release revocation hearing "is not a formal trial," and the "usual rules of evidence need not be applied." Fed. R. Crim. P. 32.1, Advisory Committee Notes (1979); *United States v. Aspinall*, 389 F.3d 332, 344 (2d Cir. 2004) (discussing probation revocation proceedings), *abrogated on other grounds by United States v. Booker*, 543 U.S. 220 (2005); *United States v. Chin*, 224 F.3d 121, 124 n.1 (2d Cir. 2000). The "full panoply of procedural safeguards does not attach to revocation proceedings" because a "probationer already stands convicted of a crime." *United States v. Carlton*, 442 F.3d 802, 809 (2d Cir. 2006) (citation and quotation marks omitted); *see also United States v. Carthen*, 681 F.3d 94, 99 (2d Cir. 2012).

In such a proceeding, a defendant does not have the unconditional right to confront and cross-examine adverse witnesses; rather, the Court may find good cause for not allowing

confrontation under Federal Rule of Criminal Procedure 32.1(b)(2)(C). *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006). The Supreme Court has recognized that, in appropriate circumstances, the procedures used for revocation should be "flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972); *see also United States v. Jones*, 299 F.3d 103, 109 (2d Cir. 2002) (noting that "the constitutional guarantees governing revocation of supervised release are identical to those applicable to revocation of parole or probation").

In a hearing concerning alleged violations of supervised release, a good-cause analysis is not required where an out-of-court statement is "within an established hearsay exception." *United States v. Diaz*, 986 F.3d 202, 209 (2d Cir. 2021).

B. Discussion

    i. *The Court Should Admit the Recorded Audio and Video Footage Collected by the Maine Drug Enforcement Administration.*

As described above, as part of their investigation into narcotics trafficking at a residence in Maine, a Special Agent with the Maine Drug Enforcement Administration directed a confidential informant to make two controlled purchases of narcotics from the defendant: on February 2, 2023, and February 9, 2023. The Special Agent provided the confidential informant with cash, arranged a pre-buy and post-buy meeting, and outfitted the confidential informant with an audio recording device and body camera. In addition to monitoring the controlled purchases via a live feed, the Special Agent, as well as other members of the Maine Drug Enforcement Administration, followed the confidential informant in an unmarked vehicle. After each purchase, the confidential informant wrote a sworn witness statement where the confidential informant verified the details of the recorded meeting: i.e., that the confidential informant met with the defendant (and others), purchased narcotics from them, and then departed.

During the first purchase, which took place on February 2, 2023 and is fully recorded, the confidential informant enters the residence and purchases both cocaine and fentanyl from the defendant and his two alleged co-conspirators, who were also charged by local law enforcement in Maine (the "State Co-Defendants"). The recording shows the defendant packaging both narcotics into small plastic bags and providing them to the confidential informant. The confidential informant then pays the defendant's State Co-Defendants and departs the residence.

During the second purchase, which took place on February 9, 2023 and is also fully recorded, the confidential informant purchases both cocaine and fentanyl from the defendant.

Neither of the other State Co-Defendants is present. The defendant and the confidential informant have the following exchange, which was fully recorded:

| | | |
|---|---|---|
| CI | | Can I get a hundred of down and of hard?[1] |
| Defendant | | Got you. |
| Defendant | | You said you wanted half of up with your down? |
| CI | | Yeah. |
| Defendant | | Got you. |
| Defendant | | You want it closed? |
| CI | | Yeah. |
| Defendant | | Got you. |

The confidential informant then proceeds to pay the defendant and leaves the residence. The confidential informant returns to the post-buy location, where the electronic recording devices are removed and turned off, and the Special Agent once again collects the narcotics.[2]

      The confidential informant's recorded meetings with the defendant are not hearsay. First, the defendant's statements (as well as the statements of his co-defendants) constitute opposing party statements under Rule 801(d)(2) of the Federal Rules of Evidence. *See* Fed. R. Evid. 801(d)(2). By the same token, the confidential informant's responses to the defendant are admissible, both because they are not offered for the truth, and because those statements—i.e., the confidential informant's requests to buy narcotics from the defendant—are offered solely for their effect on the listener (i.e., the defendant). *See* Fed. R. Evid. 801(a) (defining hearsay); *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (e-mail messages were not offered for truth of matters asserted, but instead were offered to provide context for defendant's messages sent in response); *United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir. 1995), *overruled on other grounds by United States v. Abad*, 514 F.3d 271 (2d Cir. 2008) (recorded statements of a confidential informant offered to render intelligible defendant's recorded statements were not hearsay); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990) (informant's recorded statements "are not presented for the truth of the matter asserted, but only to establish a context for the recorded statements of the accused"). The Second Circuit "ha[s] repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice." *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013); *see United States v. Ansaldi*, 372 F.3d 118, 130 (2d Cir. 2004), *abrogated on other grounds by McFadden v. United States*, 576 U.S. 186 (2015) (holding that document describing conversion of a drug when

---

[1] The Government anticipates that the Special Agent will testify that "down" is an informal name for "fentanyl," and that "hard" is an informal name for crack cocaine.

[2] The Government anticipates that the Special Agent will testify that the narcotics were field tested by the Maine Drug Enforcement Administration.

ingested was not hearsay and was properly admitted to demonstrate the defendants knew they were selling a controlled substance).[3] As a result, the recordings should be received in the hearing.

>   ii. *The Court Should Admit the Victim's Statements to Law Enforcement Regarding the June 28, 2023 Assault.*

Following the assault on June 28, 2023, the assault victim told the Deputy Marshals who transported him to the emergency room that the defendant had attacked him. The victim's statements to the Deputy Marshals, which were made in the immediate aftermath of the attack, constitute present sense impressions and/or excited utterances. Surveillance video demonstrates that Deputy Marshals entered the defendant's cell and separated the four inmates present there within minutes of the assault's conclusion. The Deputy Marshals then separated the defendant and the victim into different holding cells, and asked the victim—who was badly injured—what had happened. The victim told the Deputy Marshals that he had been sleeping when he was attacked, without warning, by the defendant.

The assault victim's statements identifying the defendant as the assailant are admissible because (i) they constitute present sense impressions under Federal Rule of Evidence 803(1) and/or (ii) excited utterances under 803(2). However, even if the Court concludes that neither exception applies, there is good cause to admit the victim's prior statements.

>   1. The Assault Victim's Statements to the Marshals Should Be Admitted as Present Sense Impressions.

The present sense impression exception to the rule against hearsay permits the admission of a hearsay "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "Such statements are considered trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002). As the Second Circuit has repeatedly recognized, "precise contemporaneity is not required" for a present sense impression. *United States v. Ibanez*, 328 F. App'x 673, 675

---

[3] To the extent the defendant challenges the admission of these statements under the Confrontation Clause, that argument is also unavailing. It is well-settled that the Confrontation Clause of the Sixth Amendment likewise does not apply in a hearing to determine whether the defendant violated the conditions of his supervised release. *United States v. Williams*, 443 F.3d 35, 45 (2d Cir. 2006); *see also United States v. Aspinall*, 389 F.3d 332, 342-43 (2d Cir. 2004) (holding that the principles set forth in *Crawford v. Washington*, 541 U.S. 36 (2004), are not applicable to probation revocation proceedings), *abrogated on other grounds as recognized in United States v. Fleming*, 397 F.3d 95, 99 n.5 (2d Cir. 2005). Rather, the protection available to alleged violators of supervised release "takes the form of a collection of due process rights," which are set forth in Federal Rule of Criminal Procedure 32.1(b)(2). *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000). Among this collection is the defendant's right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C).

(2d Cir. 2009). The victim's statements describing the assault—which the victim told the Deputy Marshals immediately after being separated from the defendant, and then repeated when the Deputy Marshals transported the victim to the hospital—constitute present sense impressions that should be admitted at the hearing.

        2. The Assault Victim's Statements Should Be Admitted as Excited Utterances.

The victim's statements are also admissible at the hearing pursuant to the excited utterance exception to the hearsay rule. This exception permits the admission of a hearsay "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). "The rationale for this hearsay exception is that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability." *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998). Unlike the present-sense-impression exception, an excited utterance therefore need not be made in close proximity in time to the event perceived. *See, e.g.*, *United States v. Scarpa*, 913 F.2d 993, 1017 (2d Cir. 1990) (rejecting argument that statements could not be excited utterances where made five or six hours after the startling event). Because the excited utterance exception is "based on the psychological impact of the event itself," the exception "permits admission of a broader range of hearsay statements" than the exception for present sense impressions. *Jones*, 299 F.3d at 112 n.3.

As discussed above, the victim described the defendant's violent, unprovoked attack to the Deputy Marshals within minutes of the assault, an account he repeated when the Marshals transported him to the emergency room later the same day. There is no question that the assault was a "startling" and "stressful" event. *United States v. Fell*, 531 F.3d 197, 231 (2d Cir. 2008). To determine whether a declarant was "under the stress of excitement caused by the event or condition," the courts also consider the declarant's demeanor, including whether the declarant was "distraught." *Id.* (internal quotation and citation omitted). As photographs collected by the Deputy Marshals and the hospital that treated the victim demonstrate, the victim was heavily bleeding from injuries to his face when he first told the Marshals about the defendant's unprovoked attack. *United States v. Peguero*, No. 6-CR-1155 (NSR), 2020 WL 5913309, at *5 (S.D.N.Y. Oct. 6, 2020) (admitting statement that domestic violence victim made to responding officer as an excited utterance because "it was made to the officer at the scene of the incident, shortly after the 9-1-1 call in which the Victim was excited, and while the Victim was still bleeding from her head").

        *iii. Both the Recorded Body Camera Statements and the Assault Victim's Statements Should Be Admitted for Good Cause.*

As described above, both the recorded exchanges between the confidential informant and the defendant, and the victim's out-of-court statements regarding the assault, are admissible under the Federal Rules of Evidence. As a result, no good-cause balancing is required. Nevertheless, even if such balancing were required, both statements should still be admitted.

For statements that would be inadmissible under the Federal Rules of Evidence, a determination of 'good cause' requires the court to balance "the defendant's interest in

confronting the declarant[ ] against[ ] . . . the government's reasons for not producing the witness and the reliability of the proffered hearsay." *Williams*, 443 F.3d at 45. Here, this analysis favors admitting both statements without requiring the underlying witnesses—i.e., the assault victim, and the confidential informant—to appear. The Second Circuit has specifically observed that a defendant's interest in cross-examining those whose statements would be used to support his conviction "is somewhat diminished when the Government's case does not rest solely on otherwise inadmissible hearsay." *United States v. McCourty*, 789 F. App'x 232, 235 (2d Cir. 2019).

Here, the assault victim's statements are supported by—and consistent with—compelling admissible evidence beyond the statements themselves, including an admissible surveillance video consistent with the assault victim's statements, as well as "extensive evidence of [the victim's] injuries," like the photographs that the Government intends to offer here. *McCourty*, 789 F. App'x at 235. The confidential informant's recorded statements are similarly supported by significant additional evidence collected by the Maine Drug Enforcement Administration, including the physical narcotics recovered from the residence, the Special Agent's surveillance of the defendant and the State Co-Defendants, and the other paraphernalia and cash recovered from the residence where the defendant sold narcotics to the confidential informant. The Government therefore respectfully submits that there is good cause for admission of both the victim's out of court statements and the recorded camera and audio footage of the narcotics transactions.

### III. Conclusion

For the reasons set forth above, the Court should permit the Deputy Marshals to testify regarding the victim's statements in the aftermath of the assault, and should admit the recorded footage of the confidential informant's purchases of narcotics from the defendant.

The Government's motions *in limine* to admit (1) the body camera footage and audio recordings depicting, defendant selling fentanyl and cocaine to a confidential informant in February 2023, and (2) the assault victim's out-of-court statements to the responding Deputy Marshals about the assault, are GRANTED for substantially the reasons stated by the Government in this letter. The Clerk of the Court is directed to terminate the motion at docket number 22.

Dated: September 24, 2023
New York, New York

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Georgia V. Kostopoulos
Daniel G. Nessim
Assistant United States Attorneys
(212) 637-2212 / 2486

cc: Kristoff Williams, Esq. (via ECF)

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE