UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
UNITED STATES OF AMERICA,                      :
                           Plaintiff,     :         22 Crim. 374 (LGS)
                                         :
                                         :        <u>FINDINGS OF FACT</u>
            -against-               :        <u>AND CONCLUSIONS OF</u>
                                         :        <u>LAW ON ALLEGED</u>
MIGUEL ANGEL FRANCO,                           :        <u>VIOLATION OF</u>
                       Defendant.   :        <u>SUPERVISED RELEASE</u>
                                         :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

In the Third Amended Violation of Supervised Release Report and Petition (the "Petition"), dated September 25, 2023, the Probation Department alleges seventeen instances when Defendant Miguel Angel Franco violated the conditions of his supervised release.  The Government stated its intention to pursue nine Specifications -- 2, 3, 4, 8, 11, 12, 13, 14 and 15.  Defendant denies the Specifications and contests the legal basis for four of them.  The parties appeared at a revocation hearing on September 26, 2023, at which the Government presented evidence.

For the reasons below, of the Specifications on which the Government presented evidence, the Court finds that Defendant violated Specifications 2, 3, 4, 8, 11, 13, 14, 15 and did not violate Specification 12.  Specifications 1, 5, 6, 7, 9, 10, 12, 16 and 17 are dismissed.

I.     **BACKGROUND**

    **A.  Defendant's Pre-Supervision History**

On November 13, 2020, Defendant pleaded guilty to Possession with Intent to Distribute a Mixture or Substance Containing Cocaine, in violation of 21 U.S.C. § 841(a)(1), § 841(b)(1)(C) and 18 U.S.C. § 2.  The District Court of Maine sentenced him to thirty-three

months of imprisonment to be followed by three years of supervised release.

Defendant's supervised release terms require that he "participate in mental health treatment, as directed by the supervising officer . . . not use or possess any controlled substance, alcohol, or other intoxicant . . . participate in a program of drug and alcohol abuse therapy to the supervising officer's satisfaction" including "testing to determine if Defendant has used drugs or intoxicants[,]" and participate in a re-entry consultation at the Probation Office.  The standard conditions of supervised release prohibit Defendant from committing a new federal, state or local crime.  *See* 18 U.S.C. § 3583(d).

### B.  History While on Supervision

On May 18, 2022, Mr. Franco commenced a three-year term of supervised release in the Southern District of New York based on the location of his residence.  On August 22, 2022, the Probation Department submitted a Request to Modify the Conditions of Supervised Release to require that Defendant attend inpatient drug treatment.  On August 30, 2022, the Probation Department's recommendation was approved.

The Probation Department issued four violation petitions, beginning on October 24, 2022, and ending with the Petition here listing seventeen specifications.  In its pre-hearing submission, the Government stated that it intended to pursue nine violations, grouping them in three categories: Specifications 12 (assault in the second degree in violation of N.Y. Penal Law § 120.05) and 13 (assault in the third degree in violation of N.Y. Penal Law § 120.00) (the "Assault Specifications"); Specifications 14 and 15 (aggravated trafficking in cocaine base and fentanyl powder in violation of the Maine Criminal Code, 17-A M.R.S. § 1105-A(1)(B)(1)) (the "Maine Narcotics Offenses"); and Specifications 2 (using oxycodone), 3 (using oxymorphone), 4 (using cocaine), 8 (failing to participate in a re-entry consultation at the Probation Office) and 11

(failing to appear before the Court as ordered by a summons) (the "Supervision Violations").

Defendant was arraigned and denied all allegations.

### C.  The Hearing

A revocation hearing was scheduled for September 26, 2023, pursuant to 18 U.S.C. § 3583(e)(3) and Federal Rule of Criminal Procedure 32.1(b)(2).  In a September 18, 2023, letter, the Government moved to admit certain out-of-court statements made by the assault victim and video and audio recordings that depicted Defendant selling cocaine and fentanyl to a confidential informant in February 2023.  In a September 21, 2023, letter, Defendant filed motions to exclude the recordings and to dismiss Specifications 12, 13, 14 and 15.  Defendant's evidentiary objections were overruled, and the Government's proposed evidence was admitted.  The rulings on the motions to dismiss are below.

At the hearing, the Government presented four witnesses, all of whom were cross-examined: Deputy U.S. Marshal Joseph McDonald; Deputy U.S. Marshal Michael Plummer; Special Agent Nelson Feero of the Maine Drug Enforcement Agency and Matthew Omlor, the U.S. Probation Officer assigned to supervise Defendant.

The Government introduced eighty-seven exhibits into evidence, including a video recording depicting the assault, photos of the victim's injuries, the victim's hospital records, photos of narcotics purchased by a confidential informant from Defendant and Defendant's drug testing results.  Defendant did not present evidence.

II.    DISCUSSION

A.  Conclusions of Law -- Defendant's Motion to Dismiss Certain Specifications

1.  Assault Specifications, Specifications 12 and 13

Defendant's motion to dismiss the Assault Specifications because he was not under "active supervised release" when the assault occurred is not persuasive.  His thirty-six month term of supervision began on May 18, 2022, the day he was released from prison, and is scheduled to end May 17, 2025.  As his supervision has not been terminated, revoked or suspended, he was under supervision at the time he committed the assault on June 28, 2023.  His motion to dismiss Specifications 12 and 13 is denied.

Defendant argues that he was not on "active" supervised release when he was in the custody of the United States Marshal Service awaiting presentment.  Defendant relies on 18 U.S.C. § 3624(e), which states, "A term of supervised release does not run during any period in which the person is imprisoned *in connection with a conviction* for a Federal, State, or local crime. . . ." (emphasis added).  Defendant was not imprisoned in connection with a conviction at the time of the assault.  He was awaiting presentment after his arrest.  He cites no authority for the proposition that a defendant in custody awaiting presentment is not on "active" supervised release.  Nor does Defendant cite any authority that recognizes "active" versus inactive supervised release as distinct categories.

Defendant also argues that the text of 18 U.S.C. § 3583(h) suggests that he was not on supervised release at the time of the assault.  That provision authorizes the Court to place a defendant *back on* supervised release *after* revocation and sentencing for a violation of supervised release.  *See* 18 U.S.C. § 3583(h) ("When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement

that the defendant be placed on a term of supervised release after imprisonment.").  This provision by its terms does not apply to Defendant.  At the time he committed the assault, his supervised release had not been revoked nor had he been sentenced for a violation of supervised release.

Defendant argues that *United States v. Johnson*, 529 U.S. 54 (2000), supports his position.  However, *Johnson* is inapposite because it addressed when a term of supervised release starts, not the conditions under which it terminates.  *Id*. at 56-60.

### 2.  Maine Narcotics Offenses, Specifications 14 and 15

Defendant's motion to dismiss the Maine Narcotics Offenses, Specifications 14 and 15, is denied.  These specifications allege violations of aggravated trafficking in cocaine base and fentanyl powder respectively in violation of the Maine Criminal Code, 17-A M.R.S. § 1105-A(1)(B)(1).  This crime requires proof that (1) an individual trafficked certain narcotics and (2) he or she has a previous conviction either for a Maine Class A, B or C trafficking offense, or for engaging in substantially similar conduct to a Maine Class A, B or C offense.  Defendant argues that his prior federal conviction for Possession of Cocaine with Intent to Distribute does not qualify as a predicate offense.  This argument is incorrect because the prior federal conviction is for conduct substantially similar to the Maine Class B offense of trafficking cocaine.

Defendant notes that the federal definition of cocaine is broader than Maine's definition. The Controlled Substances Act equates "compounds" containing cocaine with the drug itself. Maine law does not.  Therefore, Defendant argues, federal law may classify certain substances as cocaine that are not illegal under Maine law.

Even though courts "apply the categorical approach to determine whether a state law matches conduct involving a controlled substance as defined under federal law[,]" *United States*

*v. Minter*, 80 F.4th 406, 409 (2d Cir. 2023), Defendant does not justify doing the same when analyzing a federal offense under Maine law.  Defendant cites no cases, nor has the Court found any, in which the categorical approach was used to determine whether federal law matches conduct involving a controlled substance as defined under Maine law.

More importantly, § 1105-A specifically incorporates offenses that are *substantially similar* to those recognized under Maine law as predicate offenses.  The Maine legislature's choice to include "substantially similar" offenses as predicates precludes an interpretation that the statute requires an absolute categorical match for a predicate offense.

Defendant does "not contest whether the act of possessing with the intent to distribute a controlled substance constitutes substantially similar conduct as trafficking in a scheduled drug under Maine law."  Trafficking cocaine is a Class B felony under Maine law.  17-A M.R.S. § 1103-(1A)(A).  Defendant's motion to dismiss Specifications 14 and 15 is therefore denied.

## B. Findings of Fact on the Specifications

### 1. Legal Standard

"The court may . . . revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release."  18 U.S.C. § 3583(e)(3).  The Government bears the burden of proving a violation of supervised release by a preponderance of the evidence.  *United States v. Peguero*, 34 F.4th 143, 152 (2d Cir. 2022).  At a supervised release revocation proceeding, a district court "need not comply with the Federal Rules of Evidence . . . so long as [its] findings are based on verified facts and accurate knowledge." [1]  *United States v. Bari*, 599 F.3d 176, 179 (2d Cir. 2010); *accord United States v. Howard*, 737 F. App'x 35, 36 (2d Cir. 2018) (summary order).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

### 2. Findings

The Government alleges that Defendant violated the conditions of his supervised release as set forth in nine Specifications.  Defendant denies all allegations.

### a. Assault Specifications, Specifications 12 and 13

Specification 12 alleges that Defendant committed second degree assault in violation of N.Y. Penal Law § 120.05.  Specification 12 is dismissed because the evidence does not satisfy the elements of the underlying crime on which it is based.

A person is guilty of assault in the second degree when he or she, with intent to cause serious physical injury to another person, causes such injury to such person.  N.Y. Penal Law § 120.05.  "Serious physical injury" is "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."  *Id.* § 10.00(10).

The Government did not introduce evidence to support the conclusion that the victim suffered serious physical injury.  Deputy Marshal McDonald testified that the victim said that he was in serious pain.  Photographs in evidence show that the assault caused the victim substantial bruising and bleeding.  Medical records state that the victim experienced pain in the face and hip, and lacerations of approximately one and two centimeters on his face.  The record contains no evidence of substantial risk of death, protracted impairment of health or loss of bodily function.  Specification 12 is therefore dismissed.  *See, e.g.*, *People v. Trombley*, 947 N.Y.S.2d 686, 687-88 (3d Dep't 2012) (no protracted disfigurement where lacerations resulted in two scars on the victim's face, with the larger one being approximately one-inch long).

The Government has sustained its burden of showing that Defendant committed assault in the third degree in violation of N.Y. Penal Law § 120.00, as charged in Specification 13.  Assault

in the third degree occurs when an individual causes physical injury to another "recklessly" or "with the intent to cause the physical injury."  N.Y. Penal Law § 120.00.  "Physical injury" is defined as "impairment of physical condition or substantial pain."  *Id.* § 10.00(9); *see People v. Chiddick*, 866 N.E.2d 1039, 1039-40 (N.Y. 2007) (holding that breaking victim's fingernail and causing him to bleed was "substantial pain" because it constitutes "an experience that would normally be expected to bring with it more than a little pain" and that causing "substantial pain" satisfies the element of physical injury).

Defendant physically injured the victim at least recklessly, if not intentionally.  The surveillance video introduced by the Government depicts Defendant repeatedly striking the victim, another inmate, while awaiting presentment on June 28, 2023.  The medical records and photographs introduced by the Government show that the victim suffered bruises and lacerations and reported substantial pain.

### b.  Maine Narcotics Offenses, Specifications 14 and 15

Specifications 14 and 15 allege aggravated trafficking in cocaine base and fentanyl powder in violation of the Maine Criminal Code, 17-A M.R.S. § 1105-A(1)(B)(1).  The Government has sustained its burden of showing that Defendant committed these offenses.

An individual violates § 1105-A(1)(B)(1) when he or she engages in § 1103 narcotics trafficking and has a prior conviction for engaging in conduct that is "substantially similar" to a Maine Class A, B or C offense and the drug is a Schedule W drug.  An individual engages in § 1103 narcotics trafficking when he or she: (1) "intentionally or knowingly traffics in" (2) "what the person knows or believes to be a scheduled drug," (3) "which is in fact a scheduled drug and" (4) the drug is . . . [a] schedule W drug."  17-A M.R.S. § 1103(1-A)(A).  The Maine Criminal Code classifies cocaine and fentanyl as Schedule W drugs.  17-A M.R.S.

§ 1102(1)(F),(I).

The video and audio recordings together with the physical evidence recovered from the confidential informant show by a preponderance of the evidence that Defendant engaged in the alleged conduct.  The video recordings show Defendant selling cocaine and fentanyl to a confidential informant.  Special Agent Feero identified Defendant in the video and testified that the lab tests he conducted on the substances purchased from Defendant revealed that they were cocaine and fentanyl.

Defendant's prior federal conviction for Possession with Intent to Distribute a Mixture or Substance Containing Cocaine is substantially similar to § 1103 trafficking under Maine Law, which is a Class B offense.  *Compare* 21 U.S.C. § 841(a)(1) (it is unlawful to "knowingly or intentionally . . . possess with intent to manufacture, distribute, or dispense, a controlled substance"), *with* 17-A M.R.S. § 1103-(1A)(A) (it is unlawful to knowingly or intentionally traffic in what a person knows or believes to be a scheduled drug which is in fact a scheduled drug).  Consequently, the evidence shows a § 1105-A violation.

### c.  Supervision Violations, Specifications 2, 3, 4, 8 and 11

The Government also alleges that Defendant violated the terms of his supervised release by using oxycodone (Specification 2), oxymorphone (Specification 3), cocaine (Specification 4), and by failing to participate in a required re-entry consultation at the Probation Office (Specification 8) and failing to appear in Court in response to a summons (Specification 11).  The Government has shown these violations by a preponderance of the evidence.

Specification 2 is proven because the undisputed evidence shows that on or before June 8, 2022, and June 27, 2022, Defendant used oxycodone, a controlled substance.  The Government introduced a toxicology report showing that Defendant tested positive for

oxycodone.

Specification 3 is proven because the undisputed evidence shows that on or before June 8, 2022, June 27, 2022, and August 18, 2022, Defendant used oxymorphone, a controlled substance.  The Government introduced a toxicology report showing that Defendant tested positive for oxymorphone.

Specification 4 is proven because the undisputed evidence shows that on or before August 18, 2022, Defendant used cocaine, a controlled substance.  The Government introduced a toxicology report showing that Defendant tested positive for cocaine.

Specification 8 is proven because the undisputed evidence shows that on or about July 12, 2022, Defendant failed to participate in a re-entry consultation at the Probation Office. Officer Omlor testified that he scheduled a meeting for Defendant to meet with a specialist "for the purposes of coordinating employment and vocational resources."  Defendant acknowledged that he "forgot" about the appointment.

Specification 11 is proven because the undisputed evidence shows that Defendant failed to appear before the Court as ordered by a summons.  On October 24, 2022, a summons was issued in response to a violation petition submitted by Probation.  The summons ordered Defendant to appear on November 29, 2022.  Officer Omlor testified that he informed Defendant that he was required to appear in court.  On November 29, 2022, Defendant did not appear. Officer Omlor testified that Defendant acknowledged by phone that he had missed his appearance.  Officer Omlor testified that he advised Defendant to report to Probation, but that Defendant never did.  A warrant was issued for Defendant's arrest on December 1, 2022. Defendant ceased reporting to, and communicating with, the Probation Department thereafter.

### III.    CONCLUSION

For the foregoing reasons, the Court finds that Defendant has violated Specifications 2, 3, 4, 8, 11, 13, 14, 15 and did not violate Specification 12.  Specifications 1, 5, 6, 7, 9, 10, 12, 16 and 17 are dismissed.  A sentencing hearing on the violations will be held during the previously scheduled conference at **11:30 a.m. on October 31, 2023**.  As the Court did not sentence Defendant for the underlying crime, the Government and Defendant each shall submit a pre-sentence letter by **October 25, 2023**, addressing the relevant sentencing factors under 18 U.S.C. § 3583(e), (g).

Dated: October 18, 2023
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**